UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVELLE TYRONE PLAYER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ADAMS, et al.,<br><br>　　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　／ | CASE NO. 1:07-CV-01312-OWW-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(DOC. 55)<br><br>OBJECTIONS, IF ANY, DUE WITHIN EIGHTEEN DAYS |

**Findings And Recommendations**

**I.   Background**

Plaintiff Lavelle Tyrone Player ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's second amended complaint against Defendants B. Johnson and Proulx for excessive force in violation of the Eighth Amendment and against Defendants Watson, Rangel, Miller, and Campbell for retaliation in violation of the First Amendment.  On October 20, 2010, Defendants Proulx, Watson, Rangel, Miller, and Campbell filed a motion for summary judgment as to all claims against them.  Defs.' Mot. Summ. J., Doc. 55.  Plaintiff failed to file a timely opposition.  The matter is submitted pursuant to Local Rule 230(l).

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[1]  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

---

[1] The Federal Rules of Civil Procedure were updated effective December 1, 2010.

suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

///

///

### III.     Statement Of Facts[2]

At all times pertinent to this action, Plaintiff was an inmate in the custody of the CDCR incarcerated at California State Prison, Corcoran ("COR"), California.  At all times pertinent to this action, Defendant Watson was Chief Deputy Warden at COR, Defendant Miller was a Captain at COR, Defendant Rangel was a Correctional Counselor II at COR, and Defendants Johnson, Proulx and Campbell were Correctional Officers at COR.  Oftedhal was a Classification Services Representative employed by the CDCR.[3]

On January 17, 2006, Plaintiff was housed in building 2, on yard 3, A Facility COR.  During the release for the evening meal, there was a fight on the yard and all inmates on the yard were required to lay prone on the ground.  Plaintiff had not exited building 2 and was not required to lay in a prone position.

Plaintiff yelled at an inmate who was laying in the prone position out on the yard.  Defendant Johnson allegedly told Plaintiff to "shut up."  Plaintiff responded by saying "Man, you shut-up."  Defendant Johnson approached Plaintiff's building and instructed everyone to get into a prone position.  Plaintiff claims he was placed in handcuffs and then lifted to his feet.  Defendant Johnson began to escort Plaintiff to the program office.  At some point, Defendant Proulx arrived to assist.  Plaintiff alleges that during the escort Defendant Johnson picked him up and threw him on the ground.  Defendant Proulx did not use force against him.  Proulx could not have intervened as the alleged excessive force by Defendant Johnson occurred out of the blue.  Plaintiff was seen by medical and no injuries were noted.

---

[2]  All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the movant's statement of facts must be supported with citation to evidence.  *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial").  No opposition was filed.  However, Plaintiff's verified complaint may be treated as an opposing affidavit to the extent that it is verified and sets forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399 1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197 98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). The Court will consider only those facts and evidence that are relevant to resolving the Defendants' motion for summary judgment.

[3]  Oftedhal was a former Defendant who was dismissed from this action on May 17, 2011, pursuant to a notice of death.

Plaintiff did not report the use of force until he filed an administrative grievance nine days after the incident. Plaintiff was issued a Rules Violation Report ("RVR") for threatening a peace officer on January 17, 2006.

Plaintiff was immediately placed in administrative segregation by Defendant Miller because he had threatened Defendant Johnson during an escort, making his presence in general population a threat to safety and security. The 114D further stated that Plaintiff would remain in administrative segregation pending an investigation and the disciplinary process. Plaintiff filed a staff complaint against Defendant Johnson on January 26, 2006 and it was referred for an investigation. On March 1, 2006, Plaintiff was brought before the Institutional Classification Committee ("ICC"), which included Defendant Miller.

The ICC considered a memorandum prepared by Lieutenant Kavanaugh, stating that the information contained in the RVR and Crime Incident Reports revealed that Plaintiff did not make a specific threat towards a specific staff member, and determined that there was insufficient information to retain Plaintiff in administrative segregation. Plaintiff was, however, retained in administrative segregation until a new 114D issued, due to the facility captain providing information regarding an ongoing investigation.

Plaintiff's RVR was adjudicated on March 2, 2006 and he was found guilty of "Behavior that Could Lead to Violence." Defendant Campbell was assigned to be Plaintiff's investigative employee. Plaintiff claims that he gave Campbell a list of twenty witnesses but Defendant Campbell interviewed only three witnesses. The RVR indicates that the remainder of the witnesses declined to be interviewed but stated that they would testify at the hearing.

Plaintiff requested to have all witnesses testify at his RVR hearing and the Senior Hearing Officer denied Plaintiff's request because none of the inmates were present at the time of the allegations. On March 2, 2006, Plaintiff was retained in administrative segregation by Defendants Rangel and Miller in an effort to preserve the Investigative Service Unit ("ISU") investigation that had been initiated into what occurred on January 17, 2006. The investigation was to be completed within thirty days.

On March 8, 2006, the ICC committee, including Defendants Rangel and Watson,

5

recommended that Plaintiff be retained in administrative segregation for thirty days, until the ISU closure report was issued. Plaintiff was retained in administrative segregation on April 5, 2006, to preserve the integrity of the ISU investigation into Plaintiff's allegations of misconduct. Plaintiff was also referred to the Classification Services Representative for transfer. Plaintiff agreed with the committee's decision and requested transfer to Kern Valley State Prison.

On April 10, 2006, the investigation into Plaintiff's allegations of staff misconduct was completed. On April 12, 2006, the ICC determined that Plaintiff could be released to general population Level III pending transfer to a Level IV institution. Plaintiff had to be transferred because he was a Level IV inmate and Corcoran's facility B-yard was converting from a Level IV to a Level III yard. Plaintiff was released to general population on April 12, 2006. Plaintiff has no claims against Psychiatrist Campbell, whose name is reflected on each of the pertinent ICC chronos.

### IV. Analysis

#### A. Eighth Amendment - Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotations marks and citations omitted).

Defendants contend that Defendant Proulx did not use excessive force on Plaintiff, or

6

have the opportunity to prevent any alleged excessive force by Defendant Johnson.  Defs.' Mem. P. & A. Support Mot. Summ. J. 6:5-7.  Based on the undisputed facts, Defendant Proulx did not use excessive force on Plaintiff, nor did he have the opportunity to prevent any alleged excessive force.  Accordingly, there is no genuine issue of material fact in dispute as to Plaintiff's excessive force claim against Defendant Proulx.  Summary judgment should be granted in favor of Defendant Proulx and against Plaintiff.

### B. First Amendment - Retaliation

#### 1. Defendants Miller, Watson, and Rangel

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Defendants contend that Defendants Miller, Watson, and Rangel's actions while on the ICC were appropriate, necessary, and required pursuant to the California Code of Regulations, and that their actions advanced reasonable and legitimate penological goals.  Defs.' Mem. P. & A. Support Mot. Summ. J. 7:12-20.

Based on the undisputed facts, Plaintiff was placed in administrative segregation ("ad-seg") pending resolution of the RVR, and was retained in ad-seg to protect the integrity of the internal affairs investigation pursuant to Plaintiff's allegation of staff misconduct.  Plaintiff's transfer to another prison was required because  Plaintiff is a Level IV classification prisoner and B-yard, where he was currently housed, was being changed from a Level IV to a Level III yard.  Thus, there were legitimate penological goals for Defendants Miller, Watson, and Rangel to place and retain Plaintiff in ad-seg, and to later transfer him to another prison.  *See Bell v.*

7

*Wolfish*, 441 U.S. 520, 546-47 (1979) (finding preservation of internal order and discipline and maintaining institutional security to be legitimate penological goals). Accordingly, there is no genuine issue of material fact in dispute as to Plaintiff's retaliation claim against Defendants Miller, Watson, and Rangel. Summary judgment should be granted in favor of Defendants and against Plaintiff.

### 2. Defendant Campbell

Defendants contend that Defendant Campbell did not retaliate against Plaintiff by failing to properly investigate the RVR by not interviewing witnesses. Defs.' Mem. P. & A. Support Mot. Summ. J. 7:23-8:6. Based on the undisputed facts, Defendant Campbell did attempt to interview witnesses, who refused to answer the questions. There was thus no adverse action taken by Defendant Campbell against Plaintiff. Accordingly, there is no genuine issue of material fact in dispute as to Plaintiff's retaliation claim against Defendant Campbell. Summary judgment should be granted in favor of Defendant and against Plaintiff.[4]

## C. Qualified Immunity

Defendants Miller, Watson, Rangel, Proulx, and Campbell also contend that they are entitled to qualified immunity. Defs.' Mem. P. & A. Support Mot. Summ. J. 9:10-18. As the Court recommends that the Defendants be entitled to summary judgment, the Court declines to address their qualified immunity arguments.

## V. Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed October 20, 2010, should be GRANTED;

2. Summary judgment should be granted in favor of Defendants Miller, Watson, Rangel, Campbell, and Proulx;

3. Defendants Miller, Watson, Rangel, Campbell, and Proulx should be

---

[4] Based on the second amended complaint, it appears that Plaintiff intended to sue R. Campbell, a member of the ICC, rather than Defendant Campbell, the correctional officer who appeared in this action. Even if R. Campbell of the ICC had appeared in this action, he would likely be entitled to summary judgment, as Defendants Miller, Rangel, and Watson should be entitled to summary judgment for their actions in the ICC for the same claim.

8

   DISMISSED from this action; and

4.   This matter be set for trial against Defendant B. Johnson.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

   **Dated:**   **June 15, 2011**                        **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE